**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONALD THOMAS,                                )
                                              )
    Plaintiff,                                )
                                              )
    v.                                        ) **Civil Action No. 00-81Erie**
                                              )
CITY OF ERIE, PENNSYLVANIA,                   )
PAUL J. DeDIONISIO, Chief of Police,          )
OFFICER CLARK PETERS,                         )
OFFICER MICHAEL NOLAN,                        )
OFFICER MATT FISCHER, and                     )
OFFICER TODD McLAUGHLIN,                      )
                                              )
    Defendants.                               )

**OPINION**

COHILL, D.J.

    This action arises from plaintiff Donald Thomas's arrest for disorderly conduct and public drunkenness. Thomas has filed claims under 42 U.S.C. § 1983 against the City of Erie, its Chief of Police, and the officers who were present at his arrest.

    Before the Court are motions for summary judgment filed pursuant to Fed. R. Civ. P. 56(c) by defendant officers (Doc. 14) and defendants City of Erie and Chief of Police Paul J. DeDionisio (Doc. 16), and a motion for partial summary judgment filed by plaintiff Donald Thomas (Doc. 20, corrected motion Doc. 37-1), [1] as well as responsive briefs and appendices.

    We have jurisdiction over plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(4).

    Having now considered the submissions of the parties and the applicable law, for the reasons set forth below, we will grant summary judgment in favor of the defendants and against the plaintiff on all claims.

**I. Background**

    Plaintiff Donald Thomas was a patron in Latino's, a restaurant and bar located in Erie,

---

[1]

 We granted plaintiff's motion to file corrected and consolidated pleadings regarding his motion for partial summary judgment and his replies to the defendants' motions for summary judgment. We have used those corrected and consolidated documents, collectively docketed as Doc. 37, in resolving the motions before us.

Pennsylvania, on October 30, 1999 when that establishment was raided by Liquor Control Enforcement Agent ("LCE") Glenn Holmes and a backup squad of City of Erie police officers.

Earlier in the evening, Thomas and a friend had enjoyed dinner and three pitchers of beer at another restaurant. (Thomas Dep. at 15-16). Thomas arrived alone at Latino's at approximately 10:45 p.m. (Thomas Dep. at 28-29). Thomas, an attorney, had known Latino's owner, Pedro Vargas, for approximately two and a half years. At the bar, he drank two more bottles of light beer and had just ordered a third when LCE Agent Glenn Holmes and a Special Weapons and Tactics Team ("SWAT Team"), raided the bar at about 12:40 a.m. (Thomas Dep. at 28-29). Agent Holmes had been investigating the bar for liquor violations for several weeks, because there had been "numerous complaints" about the bar from the neighborhood crime watch and other residents. [2] (Holmes Dep. at 15). He had requested backup for the October 30th raid from the Erie Police Department. (Holmes Dep. at 15-16, 28). That backup was provided by the SWAT Team of defendants Detective Sergeant Clark David Peters, Detective Michael A. Nolan, Detective Matthew T. Fisher, and Detective Todd A. McLaughlin. Each of these officers testified that the Erie Police Department considers Latino's to be a "problem" bar. (Nolan Dep. at 20, 53-54; Fischer Dep. at 26-27; McLaughlin Dep. at 15; Holmes Dep. at 28).

Other individuals in the bar when the officers entered were another patron, owner Pedro Vargas, bouncer Martin Tamez, and the disc jockey. (Thomas Dep. at 32-33). Plaintiff was in the bathroom in the bar when the police entered, and returned to his seat at the bar shortly thereafter. (Thomas Dep. at 30). By the time Thomas returned to his seat, the officers had searched and secured the building. The music had been turned off, and there was no evidence of any underage persons. Holmes proceeded to do a routine inspection of the bar. (Holmes

---

[2]

Plaintiff argues that we must disregard Holmes' testimony, because it differs in some details from the testimony of the defendant officers. However, Holmes, who was conducting the raid, was in a position to observe the situation giving rise to plaintiff's claims. Discrepancies in testimony are not surprising, since Holmes was at the front of the bar or behind the bar with Vargas, and the officers, who were there as backup for Holmes' investigation, were near the rear of the room by the pool table.

Dep. at 46-51).

The parties dispute Thomas' behavior leading up to his arrest on charges of public intoxication and disorderly conduct. Thomas testified that he observed Vargas and Holmes having a discussion. (Thomas Dep. at 31). Thomas asked Vargas what was going on, and was told that the police were there because of a complaint about noise. (Thomas Dep. at 35). Thomas stated that he did not reply to Vargas. (Thomas Dep. at 36). Thomas testified that at some point after he returned to his seat, and while he was looking at one of the defendant officers, an officer yelled at him and told him to turn around. He turned away, then turned back to look at the officer again and was again told to turn around. This recurred several times. (Thomas Dep. at 40-42).

Holmes testified that he was arguing with Vargas when Thomas returned from the bathroom. He says that Thomas interfered, and told Vargas he did not have to comply with the LCE. (Holmes Dep. at 46-47). According to Holmes, Thomas repeatedly used profanity. (Holmes Dep. at 51-60). Holmes told Thomas to "be quiet, keep your mouth shut, or you're going to be arrested. Finish your drink and leave." (Holmes Dep. at 47). Holmes stated that Vargas was not cooperating, and was argumentative throughout the raid. (Holmes Dep. at 48, 51). Thomas was encouraging Vargas not to cooperate. (Holmes Dep. at 51-52). Holmes told Thomas to be quiet several times, and to stop interfering. (Holmes Dep. at 53-54, 56, 58). He stated that he told the officers to arrest Thomas for disorderly conduct. (Holmes Dep. at 60, 78, 92).

Defendant police officers' versions of the incident differ from Holmes'. The officers were in the bar to back up Holmes. Whereas Holmes was at the bar with Vargas, the officers were across the room near the pool table.

Peters was the arresting officer; he filed the charges against the plaintiff and testified at trial. Peters observed that Thomas' eyes were bloodshot, and saw him stagger from the bathroom to the bar. (Peters Dep. at 41-42, 57). Peters believed Thomas was drunk. (Peters

3

Dep. at 4-5, 42, 57). Peters told the plaintiff to turn around and stop staring at the officers. Thomas was using obscenities. (Peters Dep. at 47-49). Peters repeatedly told him to turn around and shut up, but Thomas continued. (Peters Dep. at 53). At some point, Thomas responded that the officers didn't know who they were dealing with, and that he'd have their jobs. (Peters Dep. at 54).

Fischer testified that Thomas appeared to be intoxicated. (Fischer Dep. at 65). Fischer's impression was that the plaintiff was being confrontational and trying to aggravate the police. (Fischer Dep. at 89). Thomas made obscene comments to the officers, saying "Why don't you guys get the fuck out of here and go fight some real crime." (Fischer Dep. at 66). Fischer was watching Vargas and Holmes when Peters told the plaintiff he was under arrest, but went to help Peters take the plaintiff into custody when he resisted arrest. (Fischer Dep. at 77). He tried to grab the plaintiff's wrist to handcuff him, but he continued to struggle, fell to the floor, and kept his hands underneath him. (Fischer Dep. at 78-79).

McLaughlin was also watching Vargas and Holmes. (McLaughlin Dep. at 29). He testified that the plaintiff used obscenities, but did not know if they were directed to anyone in particular. (McLaughlin Dep. at 33-34). He described the plaintiff as "another drunk sitting at the bar" and heard other officers tell Thomas to turn around and shut up. (McLaughlin Dep. at 29, 33-34).

Nolan's attention was also on Holmes and Vargas. (Nolan Dep. at 24). Thomas was drunk, and said "why don't you guys fucking leave us alone, you're harassing us" before Nolan ever spoke to him. (Nolan Dep. at 33-34, 40). Nolan testified that Vargas was giving the LCE agent "a hard time" and arguing with the agent and someone on the telephone; Holmes wanted to view the bar videotapes for underage drinkers, and Vargas and the person on the telephone refused. (Holmes Dep. at 40, 44). Holmes stated that the officers had already had some problems with the bouncer. (Nolan Dep. at 40).

The parties also dispute what happened after Peters told the plaintiff he was under

4

arrest. Plaintiff asserts that he did not struggle or resist arrest, but that he went limp and tried to drop to the floor. (Thomas Dep. at 42, 97-98). His hands were underneath him when he hit the floor. (Thomas Dep. at 47). While on the ground, Thomas was not punched. (Thomas Dep. at 116). Thomas could not describe the conduct of any particular officer during the struggle. (Thomas Dep. at 44-45, 49).

The officers testified that Thomas grabbed the bar and refused to put his hands behind his back after Peters told him he was under arrest. (Fischer Dep. at 74-79; McLaughlin Dep. at 39-44; Peters Dep. at 69-72). Fischer and McLaughlin went to Peters' assistance, and pulled Thomas away from the bar to the ground. He landed on his stomach. (*Id*.). Nolan did not participate in the struggle, but threatened to mace Thomas if he didn't put his hands behind his back. (Nolan Dep. at 46; Tamez Dep. at 27). Thomas was then handcuffed.

Sergeant Peters made the arrest, assisted by Detectives Fischer and McLaughlin. (Peters Dep. at 98, 101).

Thomas was cited for public drunkenness, in violation of 18 Pa.C.S.A § 5505. The citation for this offense describes a "very strong odor of alcoholic beverage on his breath; bloodshot eyes; staggering gait, combative and beligerant [sic]." (Pl.'s Ex. 5).

He was also cited for disorderly conduct, in violation of 18 Pa.C.S.A. § 5503(a)(3) and (4). The citation for disorderly conduct explains that "Def. did use obscene language, and did create a hazardous or physically offensive condition by any act which serves no legitimate purpose to the actor, recklessly creating a risk of public inconvenience, annoyance or alarm, saying "motherfuckers," and "get the fuck out of here," and struggling with police after being arrested." Pl.'s Ex. 4.

Peters escorted Thomas out of the bar and he was taken to the police station. (Peters Dep. at 98, 101). He was placed in a cell until 8:00 a.m. the next morning, when he was released and given two citations. (Thomas Dep. at 65-66).

Thomas went home after being released, and went to the EmergyCare medical facility at

5

2:00 p.m. (Thomas Dep. at 72). He complained of a bump on his head, a sore wrist, and other bruises. (Thomas Dep. at 72-73). An x-ray of his wrist was negative, and the hospital told him to go home and take it easy. (Thomas Dep. at 73-74).

On December 2, 1999, a trial was held before District Justice Urbaniak on the charges of disorderly conduct and public drunkenness. Sergeant Peters testified for the Commonwealth. (Trial Tr. Defs.' Ex. G). The District Justice dismissed the charges a few days later, without writing an opinion.

On December 3, 1999, Thomas filed a Citizen's Complaint with the Erie Police Department against the officers involved in his arrest. (Strickland Dep. at 9). Inspector Harold J. Strickland met with Thomas on December 7, 1999. (*Id.*). Strickland asked Thomas to provide a copy of the videotape of the incident which had been filmed by Latino's, a transcript of the trial, and any hospital records. (Strickland Dep. at 19-21; Defs.' Ex. N). Strickland directed the officers to write up reports of the incident. (Strickland Dep. at 44; reports at Defs.' Ex. J-M). Thomas did not contact Strickland after that meeting. (Strickland Dep. at 28).

On August 28, 2000, the Pennsylvania Superior Court decided *Commonwealth v. Kelly*, 758 A.2d 1284 (Pa. Super. 2000). In that decision, the court held that certain comments and gestures, including saying "fuck you, asshole" to a public employee and giving him the finger were not obscene under the Commonwealth's disorderly conduct statute. After that decision was handed down, the Erie Police officers were instructed that this conduct was not an arrestable offense. (Fischer Dep. at 92; Peters Dep. at 73).

This action followed. Thomas asserts claims under 42 U.S.C. § 1983. The complaint alleges that the defendants did not have probable cause to arrest him or to file criminal charges against him, that the arrest involved excessive force, and that their conduct violated his constitutional rights under the First and Fourth Amendments to the United States Constitution. The complaint further avers that the City of Erie had knowledge of a pattern or practice of inadequately training, supervising, and disciplining its police officers, and asserts Section 1983

liability against Erie Chief of Police Paul DeDionisio.

The defendants have now filed motions for summary judgment as to all claims, and plaintiff has filed a motion for partial summary judgment on the question of probable cause.

## II. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Childers v. Joseph*, 842 F.2d 689 (3d Cir. 1989). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of establishing an absence of evidence to support an element of the non-moving party's claim. *Celotex*, 477 U.S. at 325. The non-moving party must then go beyond the pleadings and come forward with affirmative evidence, by affidavit or other information in the factual record, to show that a genuine issue of material fact remains for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57; *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

A "genuine issue" is one in which the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986). A fact is "material" if it might affect the outcome of the suit under the applicable rule of substantive law. *Id*. A court considering summary judgment must examine the entire record in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Id*. at 255. However, Rule 56 "does not permit a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Insurance Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). The non-moving party must demonstrate the existence of a material fact supplying sufficient evidence for a reasonable jury to find in its favor. *Olson v. General Elec. Aerospace*, 101 F.3d 947, 951 (3d Cir. 1996).

7

## III. Analysis

Plaintiff has moved for partial summary judgment on the question of probable cause, arguing that the defendants did not have probable cause to arrest him for either disorderly conduct or public drunkenness. In response and by their own motion for summary judgment, the defendant officers argue that there was probable cause for the arrest. The officers' motion for summary judgment further asserts that Thomas cannot establish a claim under Section 1983 because he cannot show that any of his constitutional rights were violated.    In addition, each of the individual defendants asserts qualified immunity.

Defendants City of Erie and Chief DiDionisio have moved for summary judgment on grounds that neither had supervisory liability in this case, and that the chief of police is protected by qualified immunity.

We turn first to plaintiff's Section 1983 claims against officers Nolan, Fischer, McLaughlin, and Peters.

### A. Section 1983 Claims Against the Individual Officers

Section 1983 imposes civil liability on any person who, acting under the color of state law, deprives another of any rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. This section provides a remedy for the violation of a federal constitutional right established elsewhere, but does not create any new substantive rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a claim under Section 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States, and show that the alleged deprivation was committed by a person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Actions taken by an officer in an official capacity are under color of law, even if they are found to violate state law. *Monroe v. Pape*, 365 U.S. 167 (1961). It is clear to us that Thomas' arrest was carried out under color of state law, and defendants do not contest this

8

point. We must now determine whether defendants' actions deprived Thomas of a federally
protected right.

Thomas alleges that the defendant officers violated his rights under the First and Fourth
Amendments to the United States Constitution. Specifically, he asserts that the officers did not
have probable cause to arrest him or to file either of the criminal charges against him, and that
the arrest involved excessive force. Defendant officers respond that Thomas cannot establish a
claim under Section 1983, because he cannot show that any constitutional rights were violated.
The officers' own motion for summary judgment argues that there was probable cause to
support the arrest on both charges, that the arrest did not involve excessive force, and raises
qualified immunity from suit.

1.

**Disputed issues of material fact preclude summary judgment on whether there was
probable cause to arrest and charge the plaintiff with disorderly conduct**

Thomas first asserts that the defendants did not have probable cause to arrest him for
disorderly conduct, in violation of 18 Pa.C.S.A. § 5503 (a) (3) or (4).

a.

An arrest without probable cause violates an individual's right to be free of
unreasonable seizure under the Fourth Amendment. *Losch v. Borough of Parkesburg*, 736 F.2d
903, 910 (3d Cir. 1984).

"Probable cause to arrest exists when the facts and circumstances within the arresting
officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that
an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey
State Police*, 71 F.3d 480, 482-483 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*,
405 U.S. 156 (1972)).

"The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the
person arrested in fact committed the offense but whether the arresting officers had probable
cause to believe the person arrested had committed the offense." *Groman v. Township of*

9

*Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). In this jurisdiction, the existence of probable cause in a Section 1983 action is generally a question of fact for the jury to decide. *Sherwood v. Mulvihill*, 113 F.3d 396 (3d Cir. 1997) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)); *Patzig v. O'Neil*, 577 F.2d 841, 848 (1978). This is especially true where the determination of probable cause rests on conflicts in credibility. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997). However, if the evidence viewed most favorably to the plaintiff reasonably would not support a finding of no probable cause, the district court may find that probable cause exists as a matter of law. *Sherwood*, 113 F.3d at 401.

Moreover, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). In other words, if the arrest on one charge is proper, a Section 1983 plaintiff cannot recover on a claim that another offense was improperly charged. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 790 n. 7 (3d Cir. 2000).

The Pennsylvania statute governing disorderly conduct provides as follows:

§ 5503. Disorderly conduct

(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A § 5503(a).

The citation charging the plaintiff describes conduct found in subsections (3) and (4):

"Def. did use obscene language, and did create a hazardous or physically offensive condition by any act which serves no legitimate purpose to the actor, recklessly creating a risk of public inconvenience, annoyance or alarm, saying "motherfuckers," and "get the fuck out of here," and

10

struggling with police after being arrested." ( Pl.'s Ex. 4).  [3]

**b.**

### Section 5503(a)(3) obscene language

Thomas first argues that there was no probable cause to support an arrest for disorderly conduct under § 5503(a)(3). He makes two arguments in this regard: that the comments he allegedly made do not violate the statute because they do not constitute obscenity under Pennsylvania law, and that he didn't make the statements at issue.

Thomas explains that language is legally obscene only if it describes sexual conduct in a patently offensive manner. Plaintiff refers us to *Commonwealth v. Bryner*, 652 A.2d 909, 911-912 (Pa. Super. 1995), for the proposition that obscenity under Pennsylvania law is defined under the test set out by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, (1973). *Bryner*, however, does not establish plaintiff's contention that the officers lacked probable cause to arrest Thomas for disorderly conduct for allegedly calling the police "motherfuckers" and telling them to "get the fuck out of here." At issue in *Bryner* was whether the phrase "Go to hell, Betsy" was obscene language under § 5503(a)(3). Noting that "obscene" had not been defined in the context of the statute, a panel of the Superior Court held that obscenity should be defined using the *Miller* test. That standard for determining what language constitutes "obscenity" is as follows:

> (a) whether "the average person, applying contemporary community standards: would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Bryner*, 652 A.2d at 911-912 (quoting *Miller v. California*, 413 U.S. 15, 24 (1973)).

---

3

Probable cause must be based on circumstances known to the officer at the time of an arrest. Although it may be relevant to other claims, including a claim of excessive force, resisting arrest cannot provide probable cause for the arrest itself. *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995).

11

Applying this standard to the phrase "Go to hell, Betsy," the court concluded that the language did not appeal to anyone's prurient interests and therefore could not support a conviction for disorderly conduct in violation of § 5503(a)(3).  652 A.2d at 912.

The *Bryner's* reasoning does not control this case.  Rather, it represents an early effort by the Pennsylvania courts to define obscenity under the statute.  The Superior Court did not address language similar to Thomas' alleged comments until August of 2000, in the case of *Commonwealth v. Kelly*, 758 A.2d 1284 (Pa. Super. 2000).

In *Kelly*, plaintiff was convicted of disorderly conduct under § 5503(a)(3) for telling a borough street department employee "Fuck you, asshole" and giving him the finger.  *Id*. at 1285.  Kelly appealed, arguing that the language and gesture did not constitute obscenity under *Miller*.  The Superior Court opinion emphasized that there were no Pennsylvania decisions directly on point. *Id*. at 1286.  The court cited with approval from Justice Castille's observation in dissent in *Commonwealth v. Hock*, a case where the Pennsylvania Supreme Court held that the phrase "Fuck you, asshole" directed at a policeman did not express "fighting words" and thus did not violate § 5503(a)(1) of the disorderly conduct statute.  In dicta, Justice Castille commented that these words were not obscene under *Miller* and thus would not violate § 5503(a)(3) of the statute.  *Id*. at 1287 (quoting *Commonwealth v. Hock*, 728 A.2d 943, 947 n. 1 (Pa. 1999)).  The *Kelly* court then applied the *Miller* test it had adopted in *Bryner* to her words and conduct, and found that Kelly's words and gesture were not legally obscene under § 5503(a)(3) because they had nothing to do with sex.  This has been the state of the law in Pennsylvania since August of 2000.  But it was not Pennsylvania law in October of 1999, when Thomas was arrested.

Plaintiff also refers us to a number of cases from several jurisdictions which have concluded that the words at issue here are not fighting words, and therefore cannot be used as the basis for a conviction for disorderly conduct.  (Pl.'s Br. at 9-11).  These decisions are not binding on this court, and, moreover, Thomas is not charged with violating the "fighting words"

12

provision of the statute.

Finally, plaintiff points out that Peters, the arresting officer, testified that the alleged use of the "F" word was not intended to and did not convey an appeal to the prurient interest or express sexual conduct. (Peters Dep. at 63). Therefore, plaintiff reasons, this language cannot support his arrest for disorderly conduct. However, while this is clearly the relevant legal standard today, this does not establish that Peters lacked probable cause to arrest the plaintiff for disorderly conduct in 1999. The legal standard for obscenity adopted in *Bryner* was not applied to comments such as the plaintiff is alleged to have made until the year 2000. We reject plaintiff's argument that his alleged words did not violate the provisions of the statute under which he was charged. If Thomas made the alleged comments to any of the officers, there would be probable cause to arrest him for disorderly conduct in violation of § 5503(a)(3), and there would be no violation of a constitutional right to sustain a claim under Section 1983.

However, Thomas insists that he did not make these comments to the officers. Thomas' argument is that he said nothing at all to the police, but merely looked at them and refused to stop looking when ordered to turn around. He explains that the defendant officers considered Thomas' staring as communicating disapproval of the officer's conduct, and that this formed the basis for his arrest. (Pl.'s Br. Opp. SJ at 1).

Thomas refers us to *Brockway v. Shepherd*, 942 F.Supp. 1012 (M.D.Pa. 1996) for the proposition that his staring is protected by the First Amendment. This decision is not binding authority on this court. Moreover, it does not support plaintiff's argument. In *Brockway*, a federal district court held that gesturing to a police officer with the middle finger was not an obscene gesture in violation of § 5503(a)(3), but acknowledged that this right was not clearly established because Pennsylvania law was inconsistent on the issue. Since the right was not clearly established under Pennsylvania law, the *Brockway* court concluded that the officer was entitled to qualified immunity. Plaintiff presents no other legal support for his contention that he was arrested without probable cause because he was arrested for staring at the police officers

13

in violation of the First Amendment.

Defendants response to plaintiff's insistence that he didn't make the alleged remarks is that if he didn't make obscene remarks, then he has failed to allege a violation of a constitutional right as required to state a claim under Section 1983.

However, this ignores the fact that Thomas was arrested for disorderly conduct, and an arrest without probable cause is a violation of the constitutional right to be free of unreasonable seizures under the Fourth Amendment. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The citation for disorderly conduct states that Thomas used obscene language. The deposition testimony of each of the officers involved states that he did. He says that he did not.

There is no other evidence on the matter – it is plaintiff's testimony against that of the defendant officers, and this raises an issue of credibility. Therefore, there is a disputed question of material fact as to whether Thomas made these statements or not, which precludes summary judgment for either side on the question of whether the officers had probable cause to arrest him for violating § 5503(a)(3).

**c.**

**Section 5503(a)(4) creating a hazardous or physically offensive condition**

Plaintiff was also cited for disorderly conduct in violation of § 5503(a)(4). His motion for partial judgment argues that the defendants made this arrest without probable cause. Under this provision, "a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, . . . he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." § 5503(a)(4).

In support of his motion for partial summary judgment, Thomas points to Peters' testimony that before the plaintiff was arrested he had not engaged in any conduct that was "hazardous" or "physically offensive." (Peters Dep. at 74). However, Peters further explains

14

that he was citing Thomas because his behavior was recklessly creating a risk of public inconvenience, annoyance, or alarm, which is proscribed by the statute. (Peters Dep. at 76).

The charge at issue is disorderly conduct, and the underlying facts for both subsections listed in the citation are the same. Despite Peters' testimony, there are facts from which a reasonable jury could conclude that Thomas was interfering with the LCE raid. Given our conclusion that a disputed issue of material fact remains for trial as to whether the police had probable cause to arrest Thomas under the statute for using obscenities with the police, we will deny summary judgment for either party on this subsection as well.

**2.**

**There was probable cause to arrest the plaintiff for public intoxication**

Thomas was also charged with public intoxication, in violation of § 5505. He argues that he is entitled to summary judgment on this claim because this arrest was without probable cause, and therefore violated the Fourth Amendment. Defendant officers assert that we must grant summary judgment in their favor because there was probable cause to arrest Thomas for violating this statute.

Section 5505 prohibits public drunkenness and similar misconduct as follows:

> **§ 5505. Public drunkenness and similar misconduct**
> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

18 Pa.C.S.A. § 5505.

It is undisputed that Latino's was a public place within the meaning of the statute. As we have previously stated, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-483 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)).

15

Sergeant Peters was the arresting officer. The citation for this offense describes a "very strong odor of alcoholic beverage on his breath; bloodshot eyes; staggering gait, combative and beligerant [sic]." (Pl.'s Ex. 5). Peters was at Latino's as part of a SWAT team called to act as back-up during a planned LCE raid on the bar. Latino's was considered a "problem bar" by the Erie Police Department, and had been the scene of previous drug arrests and stabbings. Peters was aware of the bar's reputation. He has over twenty years experience in law enforcement. (Peters Dep. at 5).

Peters observed the plaintiff stagger and stumble as he walked from the bathroom back to his seat at the bar. (Peters Dep. at 41). Thomas was unsteady on his feet and Peters believed he was drunk. (Peters Dep. at 41-42). The other officers also observed that he was drunk. (Nolan Dep. at 30; McLaughlin Dep. at 29; Fischer Dep. at 72-74). Agent Holmes also believed Thomas was intoxicated. He testified that Peters "was yelling. He was drunk, in my opinion. And he was very loud and very boisterous. And he had slurred speech." (Holmes Dep. at 54).

Peters heard the plaintiff mumbling to himself and observed him talking to Vargas. Peters heard Thomas use obscenities. (Peters Dep. at 24; 48). He testified that "when I approached him, I could smell his breath, and I smelled an extreme order of alcohol on his breath. His eyes were bloodshot. I had determined before, like I said, my impression was this guy is drunk." (Peters Dep. at 57). Peters told the plaintiff to turn around and shut up three different times, and he didn't. (Peters Dep. at 57-58). He continued to talk back to the police, and Peters decided Thomas wasn't going to calm down.

Thomas himself testified that when the officers encountered him at Latino's, he had been drinking since early evening: first at dinner with his girlfriend, and then at Latino's. (Thomas Dep. at 15-16; 18; 28-29).

Thomas argues that there is no evidence that he was intoxicated to the degree required to violate the statute. (Pl.'s Br. Opp. Defs.' Mot at 7). This, however, is not the standard. The

16

question underlying probable cause is not whether the person arrested in fact committed the charged offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense. *Groman*, 47 F.3d at 634. Probable cause requires only the probability of criminal conduct, and not evidence sufficient to establish a prima facie case. *Commonwealth v. Canning*, 587 A.2d 330, 332 (Pa. Super. 1991)(citing *Commonwealth v. Murray*, 263 A.2d 886 (Pa. 1970)). Indeed, Pennsylvania courts have found there was probable cause to arrest a defendant for public intoxication even where charges were never filed after the arrest. *Canning*, 587 A.2d at 332.

Moreover, Thomas' arrest must be seen in the context of the LCE raid that was in progress while he was in Latino's. The circumstances known to the police indicated that Thomas was intoxicated, that he was interfering with or at the very least had the potential to interfere with the LCE raid then taking place, that he was making obscene comments to the police, and that the atmosphere in the bar as the raid progressed was increasingly tense. We have no difficulty concluding that Peters had probable cause to arrest the plaintiff for public intoxication, and will grant summary judgment in favor of the defendant officers and against the plaintiff on this issue.

**3.**

*The arrest did not involve excessive force*

Defendant officers have also moved for summary judgment on plaintiff's claim that they used excessive force during his arrest.

A claim that officers used excessive force in conducting an arrest may be brought under Section 1983 where a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990). When an officer uses force during an arrest, that force must be reasonable. *Groman* , 47 F.3d at 633-634. This reasonableness requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an

17

immediate threat to the safety of the officers or others, and whether he is actively resisting

arrest or attempting to evade arrest by flight." *Groman*, 47 F.3d at 634 (quoting *Graham v.*

*Connor*, 490 U.S. 386, 396 (1989)). The reasonableness inquiry is objective, but should give

appropriate scope to the circumstances of the police action, which are often "tense, uncertain,

and rapidly evolving." *Graham*, 490 U.S. at 397. Generally, the force used during an arrest

must be more than de minimis in order to for a constitutional claim to arise. *Ingraham v.*

*Wright*, 430 U.S. 651, 674 (1977); *Garcia v. County of Bucks*, 155 F.Supp.2d 259, 265 (E.D.Pa.

2001)(finding that grabbing plaintiff's coat and arms, and handcuffing him during his arrest was

a minimal and routine use of force).

To defeat summary judgment on this claim, Thomas must point to evidence from which

a reasonable jury could decide that the officers acted unreasonably and used excessive force.

Thomas argues that his arrest was unlawful because he was arrested without probable

cause, and therefore the officers acted unreasonably. (Pl.'s Br. in Opp. at 11-12).

We have concluded that there was probable cause to arrest the plaintiff for public

intoxication. In the context of a lawful arrest, the officers' conduct here does not establish a

claim of excessive force. The arrest took place in the middle of an LCE raid on the bar, and

there is evidence that Thomas was encouraging the bar's owner not to cooperate with the

police. Furthermore, the undisputed facts show that Thomas was resisting arrest. Each of the

officers testified that Thomas grabbed the bar and refused to be handcuffed after Peters told him

he was under arrest. (Fischer Dep. at 74-79; McLaughlin Dep. at 39-44; Peters Dep. at 69-72).

Fischer and McLaughlin pulled Thomas away from the bar to the ground. (*Id.*). Nolan did not

touch the plaintiff. (Nolan Dep. at 46). Thomas himself testified that he went "limp" and tried

to drop to the floor. (Thomas Dep. at 97-98). His hands went underneath him. (Thomas Dep.

at 47). He was not hit, slapped, or kicked while he was on the floor. (Thomas Dep. at 116).

Nor was he seriously injured. The afternoon following his arrest, Thomas went to a

medical clinic. He complained of a bump on his head, a sore wrist, and other bruises. (Thomas

18

Dep. at 72-73). An x-ray of his wrist was negative, and the hospital told him to go home and take it easy. (Thomas Dep. at 73-74). The officers' actions were de minimis. There is simply no evidence of excessive force, and thus there is no constitutional violation to support his claim under Section 1983.

Viewing the evidence in the light most favorable to the plaintiff, we conclude that there is no evidence from which a reasonable jury could find that defendant officers used excessive force when Thomas was arrested, and we will grant summary judgment in favor of officers McLaughlin, Fischer, Peters, and Nolan on this claim.

### 4.

### Conclusion

We have found that there is a disputed issue of material fact as to whether the plaintiff made the obscene statements which underlie his arrest for disorderly conduct, which would preclude summary judgment for either party on whether there was probable cause for this arrest. We have further concluded that the defendant officers had probable cause to arrest the plaintiff for public intoxication.

In a claim brought under Section 1983, probable cause to arrest need only be shown as to one of the offenses charged. Since there was probable cause to arrest the plaintiff for public intoxication, he has failed to establish the violation of a constitutional right.

We have also found that there is no evidence that the defendant officers used excessive force during the plaintiff's arrest, and thus his constitutional rights were not violated by the arrest.

Accordingly, since the plaintiff has failed to establish the violation of a constitutional right, we will grant summary judgment in favor of the defendant officers and against the plaintiff on the Section 1983 claims against officers Peters, Nolan, Fischer, and McLaughlin.

### B. The Officers are Shielded by Qualified Immunity

We have found that the plaintiff cannot maintain his Section 1983 claims against

defendant officers because he has failed to show a violation of a constitutional right. In the interest of completeness, we now turn to the officers' alternate argument that in the absence of probable cause, summary judgment is nevertheless appropriate because qualified immunity shields them from standing trial on plaintiff's claims.

The doctrine of qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This privilege is "an *immunity from suit* rather than a mere defense to liability(.)" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

In *Saucier*, the Supreme Court reaffirmed the two-part inquiry for qualified immunity. First, the court must consider whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. 533 U.S. at 201. If no constitutional right would have been violated were the allegations established, then no further inquiry is necessary. *Id*. However, if plaintiff's allegations meet this threshold, the court must further determine whether the right was clearly established at the time of the alleged violation. *Id*. If that right was clearly established, the official does not have qualified immunity. If a plaintiff's allegations fail to satisfy either inquiry, a defendant is entitled to qualified immunity and the claims must be dismissed. *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

Whether the right was clearly established must be determined in the specific context of each individual case. *Saucier*, 533 U.s. at 201. The Supreme Court has explained that the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it

20

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Court has long held that "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Not every arrest without probable cause requires a finding that the officer is not protected by qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The Supreme Court has emphasized that there is a clear distinction between the constitutional reasonableness standard which must apply to the merits of a claim, and the qualified immunity inquiry. Qualified immunity "has a further dimension" beyond Fourth Amendment reasonableness. *Saucier*, 533 U.S. at 205. Qualified immunity acknowledges that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Id.*

Furthermore, *Saucier* teaches that an officer may be immune from suit even though the parties dispute the conduct surrounding an arrest. In that decision, the Supreme Court squarely rejected the Ninth Circuit's position that where a disputed issue of material fact on the merits of a claim remains, qualified immunity must be denied. The Court reasoned that to deny summary judgment based on qualified immunity because a material issue of fact remains on the merits of the claim "could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many substantial claims on summary judgment.'" *Saucier*, 533 U.S. at 202 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Although the officials claiming qualified immunity have the burden of pleading and proof, *Kovats v. Rutgers*, 822 F.2d 1303 (3rd Cir.1987); *Losch v. Borough of Parkesburg, PA.*, 736 F.2d 903 (3rd Cir.1984), a plaintiff who seeks damages for violation of constitutional rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established when the actions giving rise to the claims occurred. *Hynson v. City of Chester*, 827 F.2d 932, 934 (3d Cir. 1987).

21

**Qualified immunity shields the officers from suit on plaintiff's arrest for disorderly conduct.**

We have concluded that a material issue of fact remains as to whether Thomas made obscene comments to the police. Taking the facts in the light most favorable to the plaintiff, we conclude that Thomas has alleged a violation of the First Amendment to the Constitution.

However, even if Thomas has alleged a constitutional violation, the officers are entitled to qualified immunity on this claim if plaintiff's right was not clearly established at the time of his arrest so that a reasonable police officer would have known that the arrest was without probable cause. Under *Saucier* we ask if it would have been clear to a reasonable officer that there was not probable cause to arrest Thomas for disorderly conduct, in violation of 18 Pa.C.S.A. § 5503(a)(3) & (4).

Our finding that a disputed issue of material fact remains as to whether Thomas made the comments does not preclude summary judgment in favor of the officers on this claim.

We conclude that the specific right at issue is to use obscene language to the police without being arrested under the Commonwealth's disorderly conduct statute, that right was not clearly established when Thomas was arrested in October 1999. As we have explained, the legal standard for obscenity adopted in *Bryner* was not applied to comments such as the plaintiff is alleged to have made until the year 2000. After that decision was handed down, the Erie Police Department instructed its officers that such comments would not constitute disorderly conduct. Thus the law did not put defendant officers on notice that arresting Thomas under the circumstances would be unlawful. A reasonable officer would have thought that Thomas' alleged comments were obscene under the statute.

Furthermore, even if the plaintiff did not make obscene statement, the circumstances surrounding plaintiff's arrest for disorderly conduct are such that a reasonable officer would have thought Thomas was interfering in a LCE raid on a problem bar, and therefore recklessly creating a risk of a hazardous condition. Plaintiff appeared to be intoxicated, was refusing to cooperate with the police, and was advising the owner of the bar that he did not have to

22

cooperate with the raid. A reasonable officer would have believed there was probable cause to arrest Thomas for disorderly conduct.

Therefore the officers are entitled to qualified immunity on this claim.

### Qualified immunity shields the officers from suit on plaintiff's arrest for public intoxication

We have found that there was probable cause to arrest the plaintiff for public intoxication. An arrest without probable cause does not violate a constitutional right. Thus Thomas cannot establish the first element of the test for qualified immunity, because he has not shown that the arrest for public intoxication was a constitutional violation.

Moreover, if we consider whether the officers' actions during the arrest were objectively reasonable under the circumstances confronting them, we have no doubt that a reasonable officer would have arrested Thomas for public intoxication in violation of 18 Pa.C.S.A. § 5505. From his conduct, alleged comments, staggering gait, and interference with the LCE raid that was taking place at the time, a reasonable officer would have concluded that the plaintiff was intoxicated in violation of the statute. We find that the defendant officers are entitled to summary judgment on plaintiff's claim that his arrest for public intoxication was a violation of Section 1983, based on qualified immunity.

### Qualified immunity shields the officers from suit on plaintiff's excessive force claim

We have concluded that defendant officers did not use excessive force when arresting the plaintiff. Thus Thomas cannot establish a violation of a constitutional right.

Considering whether the officers' actions during the arrest were objectively reasonable under the circumstances, we have no difficulty concluding that they were. A reasonable officer observing Thomas as he grabbed onto the bar, went limp and fell to the floor, and refused to be handcuffed, would have believed that Thomas was resisting arrest. There is no evidence that more than de minimis force was used to handcuff him. He suffered some bruising, but when he went to a clinic the following afternoon he did not require any medical treatment. The officers' actions were objectively reasonable, and the officers are entitled to qualified immunity on

23

plaintiff's claim that they used excessive force during his arrest.

## C. Claims against the City of Erie and Chief DeDionisio

Defendant City of Erie and its chief of police, Paul DeDionisio, argue that summary judgment is appropriate because there is no evidence that either violated the plaintiff's constitutional rights. DeDionisio further argues that he was not involved in the plaintiff's arrest or prosecution, and that he is entitled to qualified immunity.

In addition, the City of Erie asserts that there is no evidence that it had knowledge of a pattern or practice of inadequate training or discipline of its police officers that resulted in a violation of plaintiff's constitutional rights.

### 1.

### Section 1983 claims against the City of Erie

Local governments may be sued under § 1983 only for acts implementing an official custom or policy. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-691 (1978); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 907 (3d Cir. 1984). A municipality cannot be found liable under Section 1983 on a theory of vicarious liability, but only where "the municipality itself causes the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff must identify the challenged policy, attribute it to the municipality, and show that the execution of the policy caused the plaintiff's injury. *Losch*, 736 F.2d at 910. The municipal custom or policy must indicate deliberate indifference to citizens' rights. *City of Canton*, 489 U.S. at 388. This generally requires a showing that the municipality has a pattern of constitutional violations. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

To survive summary judgment, Thomas must point to evidence showing that there is a genuine issue of disputed fact remaining for trial on his claims against the City of Erie.

Thomas asserts that he was arrested pursuant to the City's custom, practice, or policy of arresting individuals who directed profanities at the police, and that this is unconstitutional because profanities are not obscenity under Pennsylvania's disorderly conduct statute.

24

We have already rejected plaintiff's position. *See discussion supra* Part III.A.1.(b). When Thomas was arrested in October of 1999, the Pennsylvania courts had not yet decided that the comments he is alleged to have made do not constitute disorderly conduct. That decision was not reached until August of 2000, when the Superior Court handed down *Commonwealth v. Kelly*. 758 A.2d 1284 (Pa. Super. 2000). Moreover, there is no evidence that the City of Erie failed to investigate complaints against its police officers, or failed to train them in accordance with state law.

Accordingly, plaintiff's Section 1983 claims against the City of Erie must fail, and we will grant summary judgment in favor of the defendant and against the plaintiff on these claims.

**2.**

### Section 1983 Claims Against Chief DeDionisio

Defendant DeDionisio argues that summary judgment should be granted in his favor because there is no evidence to support a claim against him. Plaintiff's amended complaint states that DeDionisio "acquiesced and/or was deliberately indifferent to the violation of the plaintiff's rights to be free from unreasonable searches, seizures, the use of excessive force, and the filing of false charges" and that the police officers were "acting in accordance with the customs, policies or practices established by, or acquiesced in by" Chief DeDionisio. Am. Compl. at ¶ 6.

A Section 1983 defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach. *Olender v. Township of Bensalem*, 32 F.Supp.2d 775, 784 (E.D.Pa.,1999). *(*citing *Martinez v. California*, 444 U.S. 277, 285,(1980)). Simply being a supervisor does not confer liability.

Plaintiff argues that DeDionisio acquiesced in the City of Erie's policy of arresting citizens for disorderly conduct if they used profanity toward the police. Thomas asserts that this policy is unconstitutional. We have concluded that it was not unconstitutional when the plaintiff was arrested. Moreover, there is absolutely no evidence that the Erie Police

25

Department and its chief had a pattern of falsely arresting individuals for public intoxication, or that DeDionisio was deliberately indifferent to Thomas' injury. In short, there is no evidence that DeDionisio violated any of Thomas' constitutional rights.

Plaintiff has failed to show that a disputed issue of material fact remains for trial, and we will grant summary judgment in favor of defendant DeDionisio on this issue.

In the alternative, DeDionisio asserts that he is entitled to qualified immunity from plaintiff's claims, and we agree. There is no evidence that the police chief violated any of the plaintiff's constitutional rights. He was not present at Latino's Bar, and was not involved in Thomas' arrest. When he learned of that arrest, he directed Inspector Strickland to investigate, which is an objectively reasonable response. We find that DeDionisio is entitled to qualified immunity from suit on plaintiff's claims, and that summary judgment on this basis is appropriate.

## IV. Conclusion

For the reasons set forth above, we conclude that material issues of disputed fact remain on plaintiff's claim that the defendant officers lacked probable cause to arrest him for disorderly conduct in violation of 18 Pa.C.S.A.§ 5503 (a) (3) and (4). However, defendant officers are entitled to qualified immunity on this claim, and we will grant summary judgment in favor of defendant officers and against the plaintiff on this basis.

We have found that defendant officers had probable cause to arrest the plaintiff for public intoxication in violation of 18 Pa.C.S.A. § 5505, and will grant summary judgment in favor of the defendant officers and against the plaintiff on this claim. Moreover, defendant officers are entitled to qualified immunity on this claim, and summary judgment will be granted on this basis as well.

We have also found that defendant officers did not act with excessive force when arresting the plaintiff, and summary judgment will be granted in favor of defendant officers and against the plaintiff on this claim. Defendant officers are also entitled to qualified immunity on

this claim, and summary judgment will be granted on this basis as well.

Summary judgment will be granted in favor of defendant City of Erie and against the plaintiff on all claims against the municipality.

Finally, summary judgment will be granted in favor of defendant Chief DeDionisio and against the plaintiff. Chief DeDionisio is also entitled to qualified immunity, and summary judgment will be granted on that alternate basis as well.

An appropriate Order follows.

_March 1, 2006_

/s/ Maurice B. Cohill, Jr.

Date

Maurice B. Cohill, Jr.
Senior United States District Judge

27