IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 00-81E |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ERIE, PENNSYLVANIA, | ) | |
| PAUL J. DeDIONISIO, Chief of Police, | ) | Jury Trial Demanded |
| OFFICER CLARK PETERS, OFFICER | ) | |
| MICHAEL NOLAN, OFFICER MATT | ) | |
| FISCHER AND OFFICER TODD | ) | |
| McLAUGHLIN, | ) | |
| | ) | |
| Defendants. | ) | Judge Maurice B. Cohill, Jr. |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE
COURT'S ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AS TO ALL OF THE PLAINTIFF'S CLAIMS AND DENYING
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

AND NOW, comes the Plaintiff, Donald Thomas, by and through his attorney, Timothy P. O'Brien, Esquire, and files the instant Motion for Reconsideration of the Court's Order Granting the Defendants' Motions for Summary Judgment as to Plaintiff's Claims and Denying Plaintiff's Cross-Motion for Summary Judgment, and avers in support thereof the following:

1. On December 3, 2000, the defendants filed motions for summary judgment on all of the plaintiff's claims contending that as a matter of law there was probable cause to arrest plaintiff for disorderly conduct and/or public intoxication and that defendants did not use excessive force in carrying out any arrest of the plaintiff.

2. On December 21, 2000 Plaintiff filed his Cross-Motion for Partial Summary Judgment contending that he was entitled to summary judgment on the issue whether

the defendant officers had probable cause to arrest him on charges of disorderly conduct due to his alleged use of "obscenities" directed at the police and/or for allegedly creating a physically hazardous condition under 18 Pa.C.S.A §5503(a)(3), and on the issue of whether the police had probable cause to arrest him on charges of public intoxication.

3. On March 1, 2006, this court denied both parties' motion for summary judgment on the disorderly conduct charge, but granted the defendants' motion for summary judgment on the public intoxication issue holding that there was, as a matter of law, probable cause to arrest plaintiff on charges of public intoxication. As a result of that decision the court then granted the remainder of the defendants' motions for summary judgment as to plaintiff's claims for false arrest, excessive force and for the violation of his first amendment rights, and also as to his supervisory and municipal liability claims against defendant Dedionisio and the City of Erie, respectively.

4. In favorably resolving defendants' motions for summary judgment, this court referenced "facts" in support of its decision as if those "facts" were not in dispute, when of record such facts were obviously disputed.

5. In addition, in resolving the public intoxication probable cause issue in favor of the defendants, this court also ignored defendants' admissions of record, which if acknowledged, precluded summary judgment in favor of the defendants on that issue.

6. First, it is of course black letter law that in deciding defendants' motions for summary judgment, plaintiff was entitled to have the "… entire record …" construed "in the light most favorable …" to him, not the other way around in a light most favorable to the defendants. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

7. In favorably deciding defendants' motions for summary judgment this court referenced alleged conduct on the part of Thomas as if such conduct was factually undisputed. These facts, among others, included that Thomas was "… very loud and very boisterous" (Opinion, P. 16); plaintiff was "… mumbling to himself …" he continued to "talk back to the police"; he was "yelling" (Opinion, P. 16).  This court also cited as an undisputed fact that plaintiff was making "… obscene comments to the police …"; that he "… was interfering with or at the very least had the potential to interfere with the L.C.E. raid …" and "that the atmosphere in the bar was increasingly tense." (Opinion p. 16-17)

8. In direct contradiction to the above findings of fact, Thomas testified that when the police arrived he was in the bathroom, which he exited and returned to where he was sitting.  (Thomas deposition, P. 37 - Supplemental Appendices).  He was looking in the direction of the officers who were doing nothing other than standing around by the pool table.  One of the officers yelled at him "what the fuck are you looking at" (Ibid.).  In response, Mr. Thomas "shrugged".  Mr. Thomas turned away from the officer and then was "looking the whole place over". (Id. at 38).  During the entire time Mr. Thomas was "completely silent". (Ibid). At some point, shortly thereafter Officer Peters started yelling at Mr. Thomas stating "what the fuck do you think you are doing …" to which Thomas replied, "I didn't do anything, leave me alone". (Id. at 41). Peters then physically arrested Thomas.

9. Nothing in Mr. Thomas' rendition of the facts supports any conclusion that he was--as found by the court-- "loud and boisterous", "used profanities", was "mumbling" that he "talked back to the police" or that he " interfered" with a CLE agent

3

or "directed obscenities" at the police. Indeed, it is difficult to see how someone who was "completely silent", could as a matter of law also be found to be "loud and boisterous", shouting "obscenities", "talking back to the police" "mumbling", engaged in disorderly conduct, or publicly intoxicated.

10. The defendants' admissions of record also flatly preclude any of the factual findings as referenced by the court in its Opinion in support of its decision granting the defendants' motion for summary judgment. Peters, who after all was the arresting officer, testified that Thomas never spoke words louder than in a conversational voice. (Peters' deposition, P. 50,51,56); (Peters' Summary Offense Hearing testimony, P14.). Likewise, when Thomas was arrested he was not screaming or yelling. (Peters' Summary Offense Hearing testimony, 12/2/99, P. 11). Further, although Peters alleged that Thomas "staggered" while exiting the bathroom he admitted that Thomas was in no danger of falling or injuring himself (Peters' deposition, P. 39-42, 45). In fact, Peters' description of how Thomas walked from the bathroom to his seat belied any state of intoxication to the point where it would be impossible for anyone to conclude that Thomas posed a danger to himself or others. According to Peters, Thomas was "walking slowly, and as carefully as he could … he was still a **little** unsteady. And he walked right to his seat and sat down". (Peters' deposition, P. 42). Thomas, according to Peters, was in enough control of his faculties to avoid bumping "into a chair". Once Mr. Thomas sat in his chair, he remained seated for a period of approximately five minutes, during which time Peters did not observe anything which would lead him to believe that Thomas "… was suffering from intoxication to the degree he was … publicly intoxicated". (Peters' deposition, p. 45-46). Even the contention

that Thomas "staggered" when he walked from the bathroom to his seat was contradicted by one of the other defendant police officer's testimony. (See Fisher deposition, pp. 51-52). Thus,-- in dispute-- was virtually every fact that the court cited to support its conclusion that there was--as a matter of law-- probable cause to arrest Thomas for public intoxication .

11. The court's conclusion that Thomas was "interfering" or had the "potential to interfere with the LCE raid", that he was making "obscene" comments, or that the "atmosphere" was increasingly tense, is also flatly contradicted by the facts of record. (See McLaughlin Deposition, PP. 20, 24); (Peters' Deposition, PP. 35, 57, 60, 61, 70, 74); (Fischer Deposition, PP 44-45); (Peters' testimony Summary Offense Hearing, PP 16-17); (McLaughlin Deposition, PP 28, 35).

12. Other of the court's factual conclusions were also disputed. For example the conclusion that that Latino's was a " problem bar" was factually disputed. (Vargas' deposition, PP. 43, 47; Peters' deposition, PP. 90-91). Likewise, the court's conclusion that Thomas was drinking since early evening is factually disputed. (Opinion, P. 16). Although Thomas had been drinking earlier that evening, the court's conclusion omits reference to the fact that after dinner with his girlfriend, Thomas returned home and spent time at home before going to Latino's where he had two Coors Light beers. There is no evidence that Mr. Thomas consumed any alcoholic beverages while he was at home after having eaten dinner with his girlfriend.

13. The court's conclusion that there was probable cause to arrest Thomas on public intoxication charges also ignored the Superior Court's Opinion in Commonwealth v. Meyer, 431 A.2d 287 (Pa. Super. 1981) that "staggering a bit" and that someone's

breath "smelled of alcohol" is insufficient evidence to establish that someone was "manifestly under the influence of alcohol, as required in order to conclude that someone violated Pennsylvania's public intoxication law.  Here, before Thomas engaged in protected speech, the only conduct alleged by Peters, the arresting officer, was that Thomas was "a little unsteady" on his feet.  Since such fact, as a matter of law, is not sufficient to support a finding of public intoxication logically it cannot form the basis of probable cause to arrest someone for that criminal offense.

14. In addition, the court's opinion ignored the undisputed facts of record that Thomas' conduct and comments were viewed by the police as critical of them in the performance of their duties. No where does the court's opinion acknowledge that such speech attributed to Mr. Thomas, therefore, constituted protected speech under the first amendment to the United States Constitution.  See e.g. Johnson v. Campbell, 332 F.3d 119 (3rd Cir. 2003) reciting abundant Supreme Court case law establishing such clearly established principle of law. As protected speech, Thomas had a right to be free from any retaliatory conduct on the part of the police. In direct contradiction to such right, the police here retaliated against Thomas on account of such speech.  This inescapable conclusion follows from the undisputed facts that the police did not take any action against Thomas until he was believed to be making critical comments about them, including that after he allegedly threatened to get Peters' job he was immediately arrested. (Peters' Summary Offense Hearing testimony, 12/2/99, P. 11).  In fact, Peters admitted that the only piece of evidence of Thomas' alleged public intoxication before Thomas engaged in protected speech was that Thomas "staggered" or was a "little" unsteady on his feet.  Peters was specifically asked:

      Question: "So the only act that we know that occurred that could have led you to believe that he was publicly intoxicated up through the point in time that he completed his conversation with Mr. Vargas was this staggered gait that you claim to have observed when he exited the bathroom; is that correct?

      Answer: "Yes".

      Question: "And then after the conversation with Mr. Vargas, Mr. Thomas then turned in his chair and began to look into the direction of the pool table officers, correct?"

      Answer: "Yes".

(Peters' deposition, P. 46).  Even the conclusion that Mr. Thomas' had slurred speech was directly contradicted by Peters' testimony in which he stated that Thomas' speech was not "mumbled", "jumbled" or "slurred" in any way. (Peters' deposition, P. 56).

    15.    Further, contrary to the court's conclusion, the law was "clearly established" in October, 1999 that the word " fuck" as part of criticism of the police could not be construed as an "obscenity."   As early as <u>Cohen v. California,</u> 403 U.S. 15 (1971), the Supreme Court explicitly stated that in order for something to be considered an "obscene expression" the expression must "… in some significant way …" be "… erotic".  No reasonably competent police officer could believe that Mr. Thomas' critical comments directed at the police were in any way, much less in-- "some significant way"-- erotic.  In fact, Peters testified that he did not consider the remarks to be "erotic" nor did he believe that Thomas intended them to be "erotic".  Since the law was "clearly established" that in order for something to be " obscene", it had to be in some "significant" way "erotic", and since it is undisputed that Thomas' comments were not intended or interpreted as "erotic", much less in any "significant" way erotic, then the inexorable conclusion is that those comments --as a matter of clearly established law-- were not and could not be construed as "obscene".  Moreover, the conclusion that the

7

law was "clearly established" is not altered by the fact that there was no Pennsylvania appellate decision dealing with the precise situation involved in this case. Indeed, when the law has provided the defendant with a fair warning, "closely analogous pre-existing case law is not required to show that the law is clearly established". Schwenke v. Hartford 204 F.3d1187, 1198 (9th Cir. 2000). Governmental officials are "required to relate established law to analogous factual settings." Salmon v. Swartz 948 F.2d 1131, 1140 (10th Cir. 1991); there does not have to be a precise factual correspondence between the cases establishing the law and the case at hand. Patrick v. Miller 953 F.2d 1240, 1249 (10th Cir. 1992); to overcome a claim of qualified immunity, it is not necessary to prove that the very action in question has previously been held unlawful. Pierce v. Smith 117 F.3d 866, 82 (5th Cir. 1997). As stated in, Sterling v. Borough of Minersville, 232 F.3d 190, 198 (3rd Cir. 2000 )("....because the right ...is well-settled, the concomitant constitutional violation was apparent notwithstanding the fact that the very action in question had not previously been held to be unlawful. See Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000), ( citation part of the quote). Here, it was "well-settled", that in order for something to be "obscene" it had to be in some "significant" way erotic which, as a matter of "undisputed fact" was not the case herein. Furthermore, when there are controlling Supreme Court decisions the absence of a state court decision directly on point is irrelevant since in deciding whether a right is "clearly established", the court must first look at the decisions of the Supreme Court, then to decisions of the circuit, and finally to decisions of other circuits. Thomas v. Cohen 340 F.3d 563, 580 (6th Cir. 2002).

16. Plaintiff submits that since the court's decision was based in whole or in part on facts that were disputed but which the court treated as undisputed for purposes of the defendants' motions for summary judgment, and since the court treated the facts in support of the plaintiff's motion that were undisputed as as if those were disputed, that the court should and must reconsider its decision denying the plaintiff's motion for summary judgment and granting the defendants' motions for summary judgment.

WHEREFORE, the plaintiff requests this honorable court to enter an order granting plaintiff's motion for reconsideration and that the court then reconsider its order granting the defendants' motions for summary judgment and denying plaintiff's partial motion for summary judgment.

Respectfully submitted,

/s/ Timothy P. O'Brien
Timothy P. O'Brien, Esquire
PA I. D. #22104
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Attorney for plaintiff