NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2134
_____

DONALD THOMAS,

Appellant

v.

CITY OF ERIE, PENNSYLVANIA;
CHIEF OF POLICE PAUL DEDIONISIO;
OFFICER CLARK PETERS;
OFFICER MICHAEL NOLAN;
UNNAMED CITY OF ERIE POLICE OFFICERS;
OFFICER MATT FISCHER;
OFFICER TODD McLAUGHLIN

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 00-cv-00081E)
District Judge: Honorable Maurice B. Cohill, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
May 15, 2007

Before: FISHER, NYGAARD and ROTH, *Circuit Judges*.

(Filed:)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This case comes to us on appeal from the District Court's grant of summary judgment in favor of the City of Erie ("the City"), Police Chief Paul J. DeDionisio, and Officers Clark Peters, Michael Nolan, Matt Fischer, and Todd McLaughlin (jointly "the Defendants") on Donald Thomas's § 1983 claim. On appeal, Thomas contends that the District Court erred in its determinations regarding his excessive force, improper arrest and filing of false charges claims. We disagree and, for the reasons set forth below, will affirm the District Court's judgment.

I.

Because we write exclusively for the parties who are familiar with the factual and legal background of this case, we set forth only those facts necessary to our analysis. On October 30, 1999, Thomas and his girlfriend had dinner at a local Erie, Pennsylvania restaurant called Snoozies. While at the restaurant, the two split three pitchers of beer, each drinking the same amount. After Thomas dropped his girlfriend off, he continued to a bar called Latinos, where he was a regular customer. While at Latinos, Thomas drank two twelve-ounce beers and had begun on a third by approximately 12:30 that night.[1]

According to the testimony of officers at the summary judgment hearing, Latinos is a well-known "problem" bar, and has been the site of several crimes. On the night of October 30, Liquor Control Enforcement Agent Glenn Holmes went to Latinos in order to

---

[1] In total, Thomas drank at least 96 ounces of beer.

both follow-up on a noise complaint and conduct a raid on the bar. Four local Erie police officers accompanied Holmes that night, Detectives Nolan, Fischer, and McLaughlin, and Sergeant Peters. At the time the officers arrived at Latinos, the manager, – Pedro Vargas – the bouncer, a disc jockey and a few patrons were the only people present. The officers secured the bar upon entrance and asked the disc jockey to turn off the music. The officers, other than Holmes, remained toward the back of the bar near the pool tables while Holmes questioned Vargas.

At the time the police officers arrived at Latinos, Thomas was in the bathroom. When he exited the bathroom, Thomas noticed the officers at the pool table and saw Holmes having a discussion with Vargas. Thomas, who is an attorney, asked Vargas what was happening and returned to his seat. The parties disagree as to Thomas's actions from that point forward.

Peters testified that Thomas staggered from the bathroom to the bar, leading Peters to believe Thomas was drunk. Peters also testified that he told Thomas to turn around and stop staring at the police officers. Thomas responded with obscene language and then told the police officers that they did not know who they were dealing with and that he would have their jobs. Peters then testified that he approached Thomas, at which point he was close enough to note that Thomas's eyes were bloodshot and his breath smelled like alcohol.

Fischer testified that Thomas was intoxicated, confrontational and was attempting to aggravate the police. He stated that Thomas said "Why don't you guys get the f- - - out of here and go fight some real crime." McLaughlin, who referred to Thomas as "another drunk at the bar," testified that Thomas used obscenities. Nolan also noted that Thomas was drunk, and testified that Thomas asked the police "why don't you guys f- - - ing leave us alone, you're harassing us."

To the contrary, Thomas stated that he never used profanity toward the police. According to his version of the story, he merely returned to his barstool where he looked at the police until they told him to turn around.

Regardless of whose version of events is true, Peters arrested Thomas for public intoxication and disorderly conduct. After Thomas was arrested, the officers testified that Thomas struggled, refusing to put his hands behind his back. When McLaughlin and Fischer went to help Peters arrest Thomas, they testified that they pulled Thomas away from the bar and, when they tried to handcuff Thomas, he laid down on the floor and put his hands under his stomach. Thomas, on the other hand, denied trying to resist arrest, but did say that he went "limp" and tried to drop to the floor, where he put his hands beneath his stomach.

Thomas was taken in a police van to the police station, where he was placed in a cell until 8:00 a.m. the next morning. Thomas claims that while the police were putting him in the police van, they hit his head against the door. After he was released from the

police station, Thomas went home, where he remained until about 2:00 p.m., at which point he took himself to a hospital. He told doctors there that he had a bump on his head, a sore wrist and other bruises. X-rays revealed no injuries, and the doctor who saw Thomas merely told him to "take it easy." During his deposition, Thomas could not state exactly how he had been injured during the arrest, and all of the officers testified that no excessive force was used to effectuate the arrest.

Thomas was acquitted of the public intoxication and disorderly conduct charges. However, the Commonwealth judge who heard the case found at least enough evidence of both charges to withstand a motion for judgment as a matter of law at the close of the prosecution's case.

Based on the events of October 30, 1999, Thomas filed a civil rights claim against the City, the Erie Chief of Police and the officers involved in the incident, alleging violations of 42 U.S.C. § 1983. The District Court granted the Defendants' motion for summary judgment. This timely appeal followed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*. *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005). "We apply the same test the district court should have used initially." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III.

On appeal, Thomas asserts that the District Court erred in granting summary judgment, as there were disputed issues of material fact that precluded finding as a matter of law that the officers did not violate Thomas's rights, or, alternatively, that they were entitled to qualified immunity. We consider that argument now.

Thomas brought his claim under 42 U.S.C. § 1983 which provides a remedy for violations of an individual's constitutional rights. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). In order to determine whether a plaintiff has a claim pursuant to § 1983, we must conduct a two-part inquiry. *Yarris v. County of Del.*, 465 F.3d 129, 140-41 (3d Cir. 2006). We first ask whether the officials' behavior violated a constitutional or statutory right. *Id.* If it did, we then proceed to a second, related inquiry. We ask whether the right was clearly established at the time of the violation. *Id.* at 141. If it was not clearly established, then the officials are entitled to qualified immunity, and the plaintiff's claim must be dismissed.

Thomas challenges the actions of the Defendants on two grounds. He claims that they arrested him without probable cause and that they used excessive force to effectuate the arrest. We will examine each claim in turn. Thomas's first claim rests on the grounds

for the arrest. The Fourth Amendment prohibits police officers from arresting citizens except upon probable cause. *Orsatti v. New Jersey*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). Probable cause to arrest exists "[i]f at the moment the arrest was made . . . the facts and circumstances within [the defendants'] knowledge and of which [they] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had violated the law . . . ." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000) (internal quotation marks and citations omitted).

The Defendants argue that they had probable cause to arrest Thomas for two violations – public intoxication in violation of 18 Pa. Cons. Stat. § 5505 and disorderly conduct in violation of 18 Pa. Cons. Stat. §§ 5503(a)(3) and (a)(4). The arrest was proper so long as they had probable cause to arrest Thomas for at least one of the violations. *See Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) (holding that there was no constitutional violation where there was probable cause for only one of three reasons given for the arrest).

Pennsylvania's public intoxication statute, 18 Pa. Cons. Stat. § 5505, makes it illegal for any person to "appear[] in any public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." *Id.* § 5505. During depositions, all five officers present at Latinos testified that Thomas appeared drunk on the night of October 30. Peters, who

arrested Thomas, observed him stumbling as he returned to his seat at the bar.  In addition, after he approached Thomas, he noticed that he had bloodshot eyes and a strong smell of alcohol on his breath.  Fischer, McLaughlin, Nolan and Holmes also testified that Thomas was drunk.

Thomas does not claim that the officers' observations of his demeanor on the night of October 30 were incorrect.  He merely argues that they were insufficient to support probable cause to arrest him for public intoxication.  He claims that staggering on the way back to the bar coupled with bloodshot eyes and the smell of alcohol on his breath is insufficient evidence of a violation of Section 5505 because his speech was not slurred and because the smell of alcohol is not "out of the ordinary" at a bar at midnight.  Pennsylvania case law is to the contrary.  In *Commonwealth v. Canning*, 587 A.2d 330 (Pa. Super. Ct. 1991), the Pennsylvania Superior Court found that police had probable cause to arrest a suspect of public intoxication where

> the officer had responded to a complaint by neighbors, who described a partially dressed man pacing back and forth on a porch where he did not belong.  Appellant told the officer that he was looking for his car.  The officer noticed an odor of alcohol on his breath and testified that appellant appeared both confused and intoxicated.

*Id.* at 332.² Evidence of Thomas staggering, having bloodshot eyes and the smell of alcohol on his breath was sufficient for Peters to have probable cause to arrest him.³ Therefore, the District Court properly granted summary judgment to the Defendants on Thomas's improper arrest claim.

We also agree with the District Court that summary judgment should have been granted to the Defendants on Thomas's excessive force claim. A plaintiff may bring a claim pursuant to § 1983 where the police use more force than is necessary to arrest him. *See Estate of Smith v. Morasco*, 430 F.3d 140, 149 (3d Cir. 2005). Excessive force claims are evaluated under the Fourth Amendment's objective reasonableness analysis. *Sharrar v. Felsing*, 128 F.3d 810, 820 (3d Cir. 1997). In the summary judgment context, we consider whether "after resolving all factual disputes in favor of the plaintiff, [ ] the

---

²This case is distinguishable from our own discussion in *Bielevicz v. Dubinon*, 915 F.2d 845, 853 (3d Cir. 1990). In *Bielevicz*, we found that there was not probable cause to arrest two suspects for public intoxication where the defendants could not have had a drink for the previous hour and a half and the only evidence of intoxication was the smell of alcohol, which one of the suspects explained was the result of a spilled drink. In this case, Thomas had the smell of alcohol on his breath, which cannot be explained by a spilled drink, coupled with bloodshot eyes and staggering, both indications of drunkenness.

³Because we find that there was probable cause to arrest Thomas for the public intoxication offense, we need not reach the question of whether the officers had probable cause to arrest him for disorderly conduct. However, were we to reach the issue, we agree with the District Court that the officers deserve qualified immunity, because, at the time of the arrest, Thomas's use of profanity met the police department's requirements for disorderly conduct. For this reason, we also find that the District Court properly granted summary judgment to the Defendants on Thomas's claim that they improperly filed charges against him.

officer's use of force was objectively reasonable under the circumstances." *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). Determining whether something was objectively reasonable under the circumstances "'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Sharrar*, 128 F.3d at 821 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). When conducting such an analysis, courts are admonished to remember that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' is constitutionally unreasonable." *Sharrar*, 128 F.3d at 821 (quoting *Graham*, 490 U.S. at 396).

Thomas claims that the police used excessive force when they forced him down to the ground in the bar and pulled his hands behind his back, and when they allegedly hit his head against the police van when they were placing him inside. These allegations are not sufficient to prove an excessive force claim. As an initial matter, Thomas admitted that when the police tried to arrest him in the bar, he went limp and dropped to the ground with his hands underneath him. Further, even if the police hit Thomas's head against the door when placing him in the police van, there is no evidence that it was done intentionally or that Thomas suffered any injury. The only doctor to ever see Thomas simply told him to go home and "take it easy." Therefore, even if what Thomas said

regarding the police action is true, there is insufficient evidence to prove that the police used excessive force. *See Gilles*, 427 F.3d at 207-08.

Because we find that the officers' conduct on October 30 did not violate Thomas's constitutional rights, the Erie Police Department and Chief DeDionisio cannot be said to have created policies or acquiesced in behavior that led to the violation of Thomas's constitutional rights. Therefore, the District Court properly granted summary judgment to the City and Chief DeDionisio.

Taking the facts in the light most favorable to Thomas, we find no constitutional violation. Therefore, and for the reasons set forth above, we will affirm the District Court's grant of summary judgment in favor of the Defendants.